UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
R. ALEXANDER ACOSTA, Secretary of Labor,    *
United States Department of Labor,           *
                                             *
                    Plaintiff,               *
                                             *        CIVIL ACTION
        v.                                   *
                                             *        NO.  1:19-cv-11211
WORLD MARBLE AND GRANITE CORP. and          *
JOAO MARTINS NETO, Individually,            *
                                             *
                                             *
                    Defendants.              *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## **COMPLAINT**

Plaintiff R. Alexander Acosta, Secretary of Labor, U.S. Department of Labor, seeks to

have Defendants properly compensate their employees not only for unpaid overtime premiums

discovered during Plaintiff's most recent investigation, but also for Defendants' failure to keep

their promise to pay overtime back wages from a previous investigation.  Plaintiff brings this

action to enjoin Defendants from violating the overtime and recordkeeping requirements of the

of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*., hereinafter called

"the Act," and to recover wages that Defendants failed to pay employees as well as liquidated

damages.  *See* 29 U.S.C. §§ 207, 211, 215(a)(2), 215(a)(5), 216(c), and 217.

I.

Jurisdiction of this action is conferred upon the Court by Section 17 of the Act, 29 U.S.C.

§ 217, and by 28 U.S.C. § 1331.

II.

Defendant World Marble and Granite Corp. ("World Marble") is, and at all times hereinafter mentioned was, a corporation having an office and place of business at 20 Grove Street, Franklin, MA 02038, within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, engaged at that location in the operation of a business which fabricates, sells, and installs marble and granite kitchen and bathroom countertops.  World Marble employs, and has employed, during the period set forth below, employees who work as fabricators, granite cutters, polishers, driver/installers, and ceramic tile installers.  World Marble has at all times hereinafter mentioned set its employees' method of compensation and policies regarding compensation, has set the specific levels of compensation for its employees, and maintains records of employment.  In addition, World Marble has set its employees' terms and conditions of employment, including hours worked, has required employees to request permission to take time off, has supervised their work, and has hired and fired them.  World Marble has provided the equipment used by its employees.  Finally, the employees have not had the opportunity to participate in World Marble's profits and losses.

III.

Defendant Joao Martins Neto has a regular place of business and transacts substantial business on an ongoing basis in this judicial district, within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, the president of World Marble.  Joao Martins Neto, at all times hereinafter mentioned, was the sole owner of World Marble.  In that capacity, he operated the business, hired, fired, and supervised employees, and assigned employees their work.  Joao Martins Neto also has issued paychecks to the employees, engaged in setting the particular hours of work, the rates and method of compensation, and the policies regarding pay.

2

His actions concerning pay practices have affected the amounts of compensation received by employees.  As such, he has actively managed, supervised, and directed the day-to-day business affairs and operations of World Marble.

Joao Martins Neto has acted at all times material herein directly and indirectly in the interest of World Marble in relation to its employees, and therefore is and has been an employer of World Marble's employees within the meaning of the Act, *see* 29 U.S.C. § 203(d).

IV.

Defendants are, and at all times since June 2, 2012 were, engaged in related activities performed through unified operation or common control for a common business purpose, and they are, and at all times hereinafter mentioned were, an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

At all times since June 2, 2012, Defendants employed employees in the activities of said enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.  Said enterprise, at all times from June 2, 2012 through 2016, had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated), and, based on existing facts and evidence, that enterprise's annual gross volume of sales made or business done likely greatly exceeded $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) for 2017 and 2018.  Accordingly, the employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the Act, 29 U.S.C. § 203(s).

**<u>Violations of Sections 7(a) and 15(a)(2) of the Act, Failure to Pay Overtime</u>**

V.

Beginning no later than June 2, 2012, Defendants have willfully and repeatedly violated the provisions of Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees for workweeks longer than forty (40) hours without compensating them at rates not less than one and one-half times the regular rate at which they were employed for hours worked in excess of forty (40) hours in said workweeks.  Therefore, Defendants are liable for overtime compensation owed to these employees and an equal amount of liquidated damages under Section 16(c) of the Act, 29 U.S.C. § 216(c), as set forth below.

VI.

Plaintiff's Wage and Hour Division conducted two investigations, the first focusing on the period June 2, 2012 through May 31, 2014 ("First Wage and Hour Investigation"), and the second focusing on the period May 18, 2015 through May 13, 2018 ("Second Wage and Hour Investigation").  The two Wage and Hour Division investigations determined that a total of nine (9) employees of Defendants regularly worked more than forty (40) hours per workweek without proper overtime compensation.

***Plaintiff's First Wage and Hour Investigation***

VII.

During the period from June 2, 2012 through May 31, 2014, seven (7) employees of Defendants, included in Exhibit A which is attached hereto and made a part hereof, did not receive proper overtime compensation for work performed.  These employees performed fabricating, granite cutting, polishing, and installing work.

VIII.

During this period, Defendants compensated the affected employees by paying them a

weekly set amount.  These workers received no overtime premium in weeks in which they

worked in excess of forty (40) hours.

IX.

Defendants failed to record the hours worked over forty (40) hours in a workweek by

employees for the time period above covered by Plaintiff's First Wage and Hour Investigation.

Given the lack of these required records, Plaintiff, during his investigation, gathered information

about the hours employees worked, and derived average weekly hours worked for each

employee.

X.

The affected employees worked on average 43.5 hours per week during the period from

June 2, 2012 through May 31, 2014.  They generally worked on Monday through Friday from

8:30 a.m. to 5:00 p.m. with a one-half hour meal break, and they also worked from 8:30 a.m. to

12:00 p.m. on Saturdays with no meal break.

XI.

Employees received a set amount of pay each week.  The amounts paid to each employee

varied from employee to employee; those payments ranged from $650.00 per week to $1,000.00

per week, with no overtime premium paid when they worked hours over forty (40) in a

workweek.

XII.

Plaintiff calculated the average hours that the affected employees worked for each of the

full weeks that they worked during the period on which Plaintiff's First Wage and Hour

Investigation focused: June 2, 2012 through May 31, 2014.

XIII.

Defendants accordingly failed to pay proper overtime to their employees included in the attached Exhibit A, as required by Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2). As a result, Plaintiff found that Defendants owed seven (7) employees a total of approximately $12,885.16, and an equal amount of liquidated damages for the period above covered by Plaintiff's First Wage and Hour Investigation.

XIV.

In 2014, at the conclusion of the First Wage and Hour Investigation, Defendants agreed to pay the back wages and liquidated damages due. Despite this agreement, Defendants failed to pay, at a minimum, four (4) out of the seven (7) affected employees a total of approximately $5,734.54 in back wages, and an equal amount of liquidated damages owed to them. These four employees are Marlon Ferreira, Gerardo Menjivar, Jose Pichardo, and Jozimar Souza. Defendants may owe additional amounts of back wages and liquidated damages to the extent that they did not come into compliance with the Act between the end of Plaintiff's First Wage and Hour Investigation on May 31, 2014 and the beginning of Plaintiff's Second Wage and Hour Investigation on May 18, 2015.

XV.

In December 2014, Defendants submitted to Plaintiff's Wage and Hour Division documents purporting to constitute proof of payment of the back and liquidated damages owed as a result of the First Wage and Hour Investigation. Defendants submitted these documents in response to the Wage and Hour's request to provide evidence showing that Defendants made these payments to the affected employees. Defendants submitted cancelled checks for each of

6

the four (4) employees named in the previous Paragraph XIV, three (3) of which have an endorsement signature on the back.  Defendants submitted checks for other employees as well. Defendants also submitted signed employee receipts in 2014 for these four (4) employees as well as for other employees.  These receipts consist of forms entitled: "U.S. Department of Labor Wage and Hour Division, Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation."  With respect to the checks and the receipts pertaining to the four (4) employees, none of the endorsement signatures on the back of the checks and none of the signatures on the receipts are, in fact, the signatures of the four (4) employees named in Paragraph XIV above.  These four (4) employees did not endorse these checks or sign these receipts.

XVI.

By submitting this documentation to Plaintiff concerning these four (4) employees, Defendants inaccurately represented to Plaintiff that these four (4) employees received the back wages and liquidated damages owed to them as determined by Plaintiff's First Wage and Hour Investigation.

XVII.

In fact, these four (4) employees did not receive any of the monies owed to them as a result of the First Wage and Hour Investigation, and they did not sign any receipts or endorse any checks concerning such monies.

***Plaintiff's Second Wage and Hour Investigation***

XVIII.

During the period from May 18, 2015 through May 13, 2018, eight (8) employees of Defendants included in the attached Exhibit A did not receive proper overtime compensation for

7

work performed during that period.  Six (6) of these eight (8) employees were also found to have

been owed compensation in the First Wage and Hour Investigation.  These eight (8) employees

performed fabricating, granite cutting, polishing, and installing work.  There is one (1) employee

owed compensation from the First Wage and Hour Investigation who was no longer working for

Defendants during the time covered by the Second Wage and Hour Investigation.  As in the First

Wage and Hour Investigation, these workers received no overtime premium in weeks in which

they worked in excess of forty (40) hours.

## XIX.

During the period covered by the Second Wage and Hour Investigation, Defendants

compensated the affected employees by paying them a weekly set amount, with no overtime

premium paid to them for hours worked over forty (40) per week.

## XX.

Defendants failed to accurately record the hours worked by employees over forty (40)

hours in a workweek.  Given the lack of these required records, Plaintiff, during his

investigation, gathered information about the hours employees worked, and derived average

weekly hours worked for each employee.

## XXI.

During the Second Wage and Hour Investigation, which covered the period from May 18,

2015 through May 13, 2018, the affected employees worked average weekly hours ranging from

43.5 to 45 hours per week.  They generally worked on Monday through Friday from 8:30 a.m. to

5:00 p.m. with a one-half hour meal break, and they also worked from 8:30 a.m. to 12:00 p.m. on

Saturdays with no meal break.  Sometimes employees work later on a weekday, to approximately

6:00 p.m., and sometimes employees work later on a Saturday, until approximately 1:00 p.m.

XXII.

Employees received a set amount of pay each week.  The amounts paid to each employee varied from employee to employee; in most cases those payments ranged from $750.00 per week to $1,100.00 per week, with no overtime premium paid when they worked hours over forty (40) in a workweek.

XXIII.

Plaintiff calculated the average hours the affected employees worked for each of the full weeks that they worked during the period on which Plaintiff's Second Wage and Hour Investigation focused: May 18, 2015 through May 13, 2018.

XXIV.

Defendants accordingly failed to pay proper overtime premiums to the employees included in the attached Exhibit A as required by Sections 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2).  As a result, Defendants owe eight (8) employees a total of approximately $22,685.54 in back wages, and an equal amount of liquidated damages for the period above covered by Plaintiff's Second Wage and Hour Investigation.  Defendants may owe additional amounts of back wages and liquidated damages to the extent that they have not come into compliance with the Act after May 13, 2018.

**Violations of Sections 11(c) and 15(a)(5) of the Act, Failure to Make and Keep Records**

XXV.

Beginning no later than June 2, 2012, Defendants have willfully and repeatedly violated the provisions of Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), in that they failed to make, keep, and preserve adequate and accurate records of employees' wages, hours, and other conditions and practices of employment, as prescribed by regulations duly

issued pursuant to authority granted in the Act and found in 29 C.F.R. Part 516, with respect to the work performed by employees during the time periods covered by both the First Wage and Hour Investigation and the Second Wage and Hour Investigation.

XXVI.

Defendants have failed, beginning no later than June 2, 2012, to make, keep, and preserve records which show adequately and accurately all employees' hours worked each workday, their total hours worked each workweek, and the employees' hours worked over forty (40) per week.

XXVII.

Specifically, Defendants only kept time records regarding a few occasional weeks during the period covered by the Second Wage and Hour Investigation, and these records only listed total hours worked per week.

XXVIII.

At the conclusion of the Second Wage and Hour Investigation, Defendants started to keep records in more detail regarding hours worked by employees. However, these records were not fully accurate, though they portray the payment of overtime compensation. Defendants listed in these payroll records amounts labelled as a "bonus." These bonus amounts, when combined with the other amounts paid, caused the total compensation paid to each employee to equal the weekly set amounts paid to each of the employees before Defendants began keeping these records. These newly kept records inaccurately simulate the payment of overtime, without changing the total amount Defendants were paying to employees.

**<u>Defendants' Violations Relating to the Second Wage and Hour Investigation Are Willful</u>**

XXIX.

Defendants' overtime and recordkeeping violations of the Act during the Second Wage and Hour Investigation, as set forth above, were knowing, deliberate, and intentional, or were done with reckless disregard for the Act.

XXX.

Defendants committed the violations of the overtime and recordkeeping provisions of the Act at issue in the First Wage and Hour Investigation as described above.  At the conclusion of the First Wage and Hour Investigation, Plaintiff's Wage and Hour Division held a final conference with Defendants on August 20, 2014 in which the agency explained the violations to Defendants and discussed with Defendants compliance with the overtime and recordkeeping provisions of the Act.  Defendants advised Plaintiffs' Wage and Hour Division at this meeting that they would comply with the Act in the future.

XXXI.

Even though the Wage and Hour Division explained to Defendants their overtime and recordkeeping violations of the Act at the end of the First Wage and Hour Investigation and Defendants agreed to comply with the Act from that point forward, Defendants subsequently committed the same type of overtime and recordkeeping violations of the Act.  Plaintiff determined, through its Second Wage and Hour Investigation, that Defendants paid their employees in the same manner as found by Plaintiff in the First Wage and Hour Investigation, and that Defendants were, in large part, failing to keep the same required records as before.

XXXII.

In addition, as set forth above in the allegations made in Paragraphs XIV to XVII, Defendants failed to pay, at a minimum, four (4) employees back wages and liquidated damages owed to them from the First Wage and Hour Investigation yet represented to Plaintiff that such monies were in fact paid.  Defendants had promised Plaintiff that they would pay all of the back wages and liquidated damages Plaintiff found to be due to employees as a result of the First Wage and Hour Investigation.  However, in response to Plaintiff's request for evidence of payment to the employees of the back wages and liquidated damages owed, Defendants inaccurately represented to Plaintiff that the employees had been paid the wages and liquidated damages due to them. Such action by Defendants misled Plaintiff into believing that this compensation had been paid.

XXXIII.

Therefore, Defendants were aware of the overtime and recordkeeping requirements of the Act during the period covered by Plaintiff's Second Wage and Hour Investigation, and yet they intentionally violated those requirements, or acted in reckless disregard of them.

**Plaintiff is Not Barred by the Statute of Limitations from Seeking Recovery of Back Wages Relating to the First Wage and Hour Investigation Under the Doctrine of Equitable Tolling**

XXXIV.

Plaintiff is not barred by the applicable statute of limitations from seeking recovery of unpaid back wages and liquidated damages related to the First Wage and Hour Investigation, which covered the period from June 2, 2012 through May 31, 2014, or from seeking monies owed under the Act regarding any time subsequent to this period and outside the applicable statute of limitations to the extent that Defendants failed to come into compliance with the Act

during such time.

XXXV.

As set forth above in the allegations made in Paragraphs XIV to XVII above, Defendants failed to pay at least four (4) employees back wages and liquidated damages owed to them related to the First Wage and Hour Investigation.  Defendants had promised Plaintiff that they would pay all amounts owed to employees to resolve the First Wage and Hour Investigation. Defendants inaccurately represented to Plaintiff that such monies were paid in response to Plaintiff's request for documentation of payment of the back wages and liquidated damages owed, thereby misleading Plaintiff into believing that this compensation had been paid.

XXXVI.

Had Plaintiff known that Defendants inaccurately represented to him that the back wages and liquidated damages owed to four (4) of the employees in connection with Plaintiff's First Wage and Hour Investigation were paid, Plaintiff would have taken appropriate administrative and legal actions to recover such unpaid compensation.  Plaintiff did not take these steps due to the inaccurate representations made by Defendants.

XXXVII.

Defendants' actions misled Plaintiff and concealed from him the failure to pay compensation to four (4) employees, and caused Plaintiff to refrain from taking administrative and legal steps to recover the compensation owed to at least these four (4) employees. Accordingly, the doctrine of equitable tolling prevents the statute of limitations from being a bar to Plaintiff's recovery of this compensation, or a bar to the recovery of any compensation arising from any subsequent time periods outside the applicable statute of limitations to the extent that Defendants failed to come into compliance with the Act during any such periods.

**Prayer For Relief**

XXXVIII.

During the relevant period beginning no later than June 2, 2012, Defendants willfully and repeatedly violated the aforesaid provisions of the Act, as alleged.

WHEREFORE, cause having been shown, Plaintiff prays that the Court enter an Order and judgment:

(1)     Pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from prospectively violating the Act; and

(2)     Pursuant to Section 16(c) of the Act, 29 U.S.C. § 216(c), finding Defendants liable for unpaid back wages found due to Defendants' employees listed in the attached Exhibit A plus liquidated damages equal in amount to the unpaid compensation found due. Alternatively, in the event liquidated damages are not awarded, Plaintiff prays for an Order pursuant to Section 17 of the Act, 29 U.S.C. § 217, enjoining and restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with them, from withholding payment of unpaid back wages found due to Defendants' employees, and pre-judgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

(3)     Awarding Plaintiff the costs and fees associated with this action; and

(4)     Granting such other and further relief as may be necessary and appropriate.

Kate S. O'Scannlain
Solicitor of Labor

Post Office Address:                    Maia S. Fisher
U.S. Department of Labor          Regional Solicitor
Office of the Solicitor

JFK Federal Bldg., Room E-375
Boston, MA  02203
Glickman.james@dol.gov
TEL.: 617-565-2500
FAX: 617-565-2142

/s/ James Glickman
James Glickman
Senior Trial Attorney
Mass. BBO No. 550777

Date: May 30, 2019