UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| EUGENE SCALIA, Secretary of Labor, | * | |
| United States Department of Labor, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-11211-ADB |
| | * | |
| WORLD MARBLE AND GRANITE CORP. | * | |
| and JOAO MARTINS NETO, Individually, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BURROUGHS, D.J.

The Secretary of the U.S. Department of Labor ("Plaintiff") brings this action against World Marble and Granite Corp. ("World Marble") and Joao Martins Neto ("Neto") (collectively "Defendants") asserting violations of the Fair Labor Standards Act of 1938 ("FLSA"). [ECF No. 1]. Currently before the Court is Plaintiff's motion for partial summary judgment on five issues related to those alleged violations. [ECF No. 22]. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

## I.      BACKGROUND

### A.      Local Rule 56.1

As a preliminary matter, Plaintiff argues that the facts in his statement of undisputed material facts, [ECF No. 24 ("SUMF")], should be deemed admitted in their entirety because Defendants did not file the concise statement of disputed material facts required by Local Rule 56.1. [ECF No. 31 at 2].

Local Rule 56.1 requires that "[a] party opposing [a] motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  L.R. 56.1.  "Local Rule 56.1 was adopted to expedite the process of determining which facts are genuinely in dispute, so that the court may turn quickly to the usually more difficult task of determining whether the disputed issues are material."  Brown v. Armstrong, 957 F. Supp. 1293, 1297 (D. Mass. 1997), aff'd, 129 F.3d 1252 (1st Cir. 1997).

"Where a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted."  Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) (citing Swallow v. Fetzer Vineyards, 46 F. App'x 636, 638–39 (1st Cir. 2002)); see also Summers v. City of Fitchburg, 940 F.3d 133, 138 (1st Cir. 2019) ("Here, the [non-moving party] flouted Local Rule 56.1 and allowed the [the moving party] to map the boundaries of the summary judgment record.  Such actions have consequences, and the district court deemed the [moving party's] statement of undisputed material facts admitted.  Given the clarity of Local Rule 56.1 and the important function that it serves, the district court was fully justified in limiting the summary judgment record to the four corners of the [moving party's] statement of undisputed material facts." (first citing United States v. McNicol, 829 F.3d 77, 80–81 (1st Cir. 2016); then citing Schiffmann v. United States, 811 F.3d 519, 524–25 (1st Cir. 2016))).

The Court finds that Defendants failed to comply with Local Rule 56.1.  Defendants filed an opposition to Plaintiff's motion for partial summary judgment, [ECF No. 30], but did not file a counterstatement of material facts in accordance with Local Rule 56.1 or otherwise assist the

Court in determining which facts are genuinely in dispute.  Consequently, the portions of
Plaintiff's statement of undisputed material facts that are not specifically controverted with
support in the record are deemed admitted.

**B.   Factual Background[1]**

Plaintiff is the Secretary of the U.S. Department of Labor ("DOL").  [ECF No. 1 at 1].
World Marble is a corporation, with an office and place of business in Franklin, Massachusetts,
that at all relevant times engaged in the business of fabricating, selling, and installing marble and
granite kitchen and bathroom countertops.  [SUMF ¶ 2].  World Marble employs and has
employed workers as fabricators, granite cutters, polishers, driver/installers, and ceramic tile
installers.  [Id. ¶ 4].  At all times relevant to this litigation, Neto was the sole owner of World
Marble.  [Id. ¶10].  World Marble and Neto hired, fired, supervised, and assigned work to World
Marble's employees.  [Id. ¶¶ 6, 11].  World Marble and/or Neto also issued paychecks, set work
schedules, rates of pay, and methods of compensation, and established policies related to
compensation.  [Id. ¶¶ 5, 12].

**1.   The DOL's Wage and Hour Division's Investigations**

The DOL's Wage and Hour Division ("Wage and Hour Division") has twice investigated
Defendants' compliance with the FLSA's requirements.  [SUMF ¶ 19].  During the period
covered by the first investigation, June 2, 2012 through May 31, 2014, Defendants' employees
worked an average of 43.5 hours a week and were paid a set amount each week, even though the
number of overtime hours they worked varied from week to week.  [Id. ¶¶ 19, 20].  After
investigating Defendants' pay practices, the Wage and Hour Division determined that under the

---

[1]The Court draws the facts from Plaintiff's statement of undisputed material facts, [SUMF], and
the documents referenced therein, as well as the documents referenced in Plaintiff's reply brief,
[ECF No. 31].

FLSA's overtime provisions, Defendants owed seven of their employees a total of $12,885.16 in back wages and an equal amount in liquated damages. [Id. ¶¶ 21, 42]. Defendants did not contest the determination and agreed to pay the overtime wages and liquidated damages to the seven employees. [Id. ¶¶ 22, 45]. On August 19, 2014, Neto signed a settlement agreement stating that Defendants' "employment practices are currently in compliance with all applicable provisions of the [FLSA] as interpreted by the [Plaintiff]" and that they "will continue to comply with all applicable provisions of the [FLSA] in the future." [Id. ¶¶ 46–47]. In connection with this first investigation, Defendants were told by the Wage and Hour Division to begin recording their employees' work start and stop times. [Id. ¶ 44].

After the first investigation, Defendants did not consult with counsel, perform research, or undertake any other efforts to determine how to comply with the FLSA's overtime provisions or to ensure that their employees were properly paid. [SUMF ¶¶ 50–51].

The Wage and Hour Division initiated a second investigation, which covered the period from May 18, 2015 to May 13, 2018. [SUMF ¶ 19]. During this time period, employee work hours fluctuated from week to week, but averaged between 43.5 and 45 hours per week. [Id. ¶¶ 23, 25]. During the second investigation period, Defendants again generally paid their employees a set amount per week, basing an employee's weekly set amount on that employee's experience and work performance. [Id. ¶¶ 26–27]. Defendants did not give employees any compensation other than their biweekly paychecks. [Id. ¶¶ 28–29]. If an employee worked fewer than 40 hours in a week, however, then the employee was paid less than the weekly set amount. [Id. ¶ 30].

On August 21, 2018, the parties entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement").  [ECF No. 31-1 ¶ 3; ECF No. 31-2 at 4].[2]  In relevant part, the Tolling Agreement states:

> The Secretary of Labor, U.S. Department of Labor, ("the Secretary") has conducted an investigation of World Marble and Granite Corporation and Joao Martins Neto, an individual, (collectively, the "Employers") pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, et seq. ("FLSA" or "the Act"), concerning the period beginning on June 2, 2012 through May 31, 2014 and the period beginning August 11, 2014 through August 6, 2017, plus any necessary update period.  The Secretary and the Employers want the opportunity to discuss this matter further, to attempt to reach a settlement, to attempt to resolve outstanding disputes, and to further investigate where appropriate.  Accordingly, the Secretary and the Employers, in consideration of the promises and statements made herein, understand and agree as follows:
>
> 1. The Secretary may ultimately bring legal proceedings under the Act as a result of the Secretary's findings from this investigation; however, the statute of limitations set forth at Section 6 of the Portal-to-Portal Act, 29 U.S.C. 255, and/or other applicable statutes of limitations, may bar the assertion of certain rights under the Act in legal proceedings brought by the Secretary.
> 2. In exchange for the Secretary's agreement to withhold immediate filing of legal proceedings under the Act and to allow time for the Secretary and the Employers to discuss and to attempt to resolve this matter, the Employers agree to toll the running of the statute of limitations as follows.
> 3. The Secretary and the Employers agree that the statute of limitations will be tolled beginning on August 14, 2018 (the "Tolling Date").  Any legal or equitable proceedings that may be brought against the Employers as a result of the Secretary's findings from this investigation or by affected employees will be deemed to have been filed on the Tolling Date.
>
> [. . .]
>
> 5. The Employers agree that this Tolling Agreement ("Agreement") (or any copy thereof) may be introduced into evidence as proof of the waiver and tolling agreed to herein, in all legal proceedings that may be brought pursuant to Sections 15, 16(b), 16(c), 16(e) and/or 17 of the Act.

[ECF No. 31-2 at 2–3].

---

[2] Plaintiff raised the Tolling Agreement for the first time in his reply, which attached a copy of the Tolling Agreement and a declaration from the DOL trial attorney who executed it.  [ECF No. 31 at 4; ECF No. 31-1 (Glickman Dec.); ECF No. 31-2 (Tolling Agreement)].

2.      Damages Calculations for Violations of the FLSA's Overtime
Requirements

The Wage and Hour Division concluded that Defendants owe a total of $20,433.53 in

back wages to seven employees for overtime violations during the second investigation period.

[ECF No. 31-3 ¶ 3].  To calculate the damages owed, the Wage and Hour Division performed a

workweek-by-workweek calculation that was based upon an "average of hours worked per week

figure."  [SUMF ¶¶ 33, 36].  When employers do not maintain records of the hours worked by

employees, the Wage and Hour Division's "procedures" permit calculating damages based on an

average of the hours worked.  [Id. ¶ 33].  The Wage and Hour Division determined that

Defendants' employees worked an average of 44.25 hours per week.  [Id. ¶ 34].  The Wage and

Hour Division used 44.25 hours because it is the midpoint of the range of hours that Defendants

admitted their employees worked.  [Id. ¶ 34 (stating that Defendants admitted that their

employees worked between 43.5 and 45 hours a week)].  The Wage and Hour Division also

reviewed Defendants' payroll documents and other timecard records provided by Defendants and

found that 44.25 hours worked per week is "consistent" with the records it reviewed.  [Id. ¶ 35].

Using Defendants' payroll spreadsheets, the Wage and Hour Division then divided the

amount each employee was paid for each workweek by 44.25 to determine the employees'

regular rate of pay for that workweek.  [SUMF ¶ 36].  Once the regular rate of pay for the

workweek was calculated, the Wage and Hour Division multiplied one-half the regular rate of

pay by the hours worked over 40, using the weekly average of 44.25.  [Id. ¶ 37].  The product of

that calculation was the amount of overtime owed to the employee for that workweek.  [Id.].  If

Defendants' records showed that the employee did not work more than 40 hours in a given

workweek, no overtime calculation was performed for that week.  [Id. ¶ 38].  The calculations

for each employee are set out in "Wage Transcription and Computation" sheets. [ECF No. 31-3 ¶ 2; ECF No. 31-4].

Because the Tolling Agreement deems any lawsuit challenging conduct that occurred during the Wage and Hour Division's investigations as filed on August 14, 2018, the Wage and Hour Division used the date range of August 14, 2015 through May 13, 2018 to calculate the back wages owed for overtime work performed during the second investigation period.[3]  See [ECF No. 31-3 ¶ 2].  Plaintiff argues that the relevant damages period extends for three years before the date of filing because of the FLSA's three-year statute of limitations for willful violations.  See [ECF No. 31 at 4].

### 3.    Defendants' Recordkeeping of Employees' Hours

Before the Wage and Hour Division's second investigation, Defendants recorded employees' weekly hours as 45 hours per week, even if employees worked a different amount. [SUMF ¶ 56].  At some point, as part of Defendants' efforts to keep track of hours worked by employees, World Marble's office manager, Marilaine Faria ("Ms. Faria"), began writing down the employees' approximate daily hours on a piece of paper, entering the total weekly hours worked into a computer payroll spreadsheet, and then discarding the paper that had the

---

[3] In his opening brief, Plaintiff originally calculated the damages incurred from May 18, 2015 to May 13, 2018, which is the period covered by the second investigation. [ECF No. 23 at 3].  He concluded that Defendants owed $22,846.66 in back wages and an equal amount in liquidated damages. [Id.].  Plaintiff acknowledges that, due to the Tolling Agreement, the opening brief's calculations were based on an incorrect date range and he has revised his calculations in his reply brief.  Although the reply brief includes updated damages amounts, Plaintiff continues to rely on the calculation methodology described in the declaration of Wage and Hour Division investigator Thomas Carroll that was filed with the opening brief.  [ECF No. 24-7 (declaration of Thomas Carroll submitted with Plaintiff's opening brief); ECF No. 31-3 ¶ 2 (declaration of Thomas Carroll submitted with Plaintiff's reply brief stating that aside from the date range, "[i]n all other respects my back wage calculations remain unchanged" from the calculations submitted with the opening brief)].  Accordingly, the Court refers to both declarations when analyzing the damages calculations.

daily hours written on it.  [Id. ¶ 52].  The weekly totals recorded in the computer payroll spreadsheet were sometimes inaccurate and did not include break times.  [Id.].

Beginning in October 2017, Defendants began using a time clock to record employee hours.  [SUMF ¶ 53].  On days when employees worked in the World Marble shop, they punched in and out using the time clock, but they did not use the time clock on days they worked outside of the shop.  [Id. ¶¶ 53–54].  When employees performed installation work outside of the World Marble shop, Defendants assumed that the employees worked the hours that were on their schedules.  [Id. ¶ 55].

In this litigation, Defendants have not produced complete payroll records for their employees.  [SUMF ¶¶ 58–62].  For the period prior to October 2017, Defendants have only provided the computer payroll spreadsheets, which are sometimes inaccurate or inconsistent with the hours actually worked.  [Id. ¶ 58].  For the period beginning in October 2017, Defendants have produced "a limited number of copies of timecards for five employees for certain weeks, a limited number of handwritten notes regarding weekly hours worked, and a limited number of documents signed by employees showing amounts paid per pay period and weekly hours worked."  [Id. ¶ 59].  There are "a number of employees" for whom no timecards were produced.  [Id. ¶ 62].  The handwritten notes and documents signed by employees do not cover every workweek for each affected employee.  [Id. ¶ 63].  The Court has not been provided with copies of the pay records.

C.      **Procedural History**

Plaintiff filed his complaint on May 30, 2019.  [ECF No. 1].  On September 18, 2020, Plaintiff moved for partial summary judgment, [ECF No. 22 (motion); ECF No. 23 (memorandum)], on the following five issues: (1) Defendants' failure to pay employees the

required overtime premium for each overtime hour worked during the second investigation period in violation of § 207(a)(1) of the FLSA; (2) Defendants' failure to comply with the FLSA's recordkeeping requirements; (3) the amount of back wages Defendants owe their employees for the overtime violations during the second investigation period; (4) Defendants' liability for liquidated damages in an amount equal to the back wages owed in the absence of a good faith defense; and (5) Defendants' willfulness in failing to comply with the FLSA's overtime and recordkeeping requirements. [ECF No. 23 at 2, 8–18]. Plaintiff also asks the Court to enjoin Defendants from violating the FLSA in the future. [Id. at 2, 18–19]. Defendants filed an untimely opposition to the motion on November 9, 2020, [ECF No. 30], and Plaintiff replied on November 23, 2020, [ECF No. 31].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6.  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

III.      DISCUSSION

A.      Failure to Pay the Required Overtime Premium

Plaintiff argues that there is no genuine dispute that Defendants violated § 207(a)(1) of the FLSA because Defendants failed to pay the required overtime premium to their employees during the second investigation period.  [ECF No. 23 at 8–11].  Plaintiff avers that Defendants knew their employees worked more than 40 hours a week on average but nonetheless paid them a set weekly amount for that work.  [Id. at 11].  The set amount was untethered to the actual amount of overtime hours worked, and therefore did not include the overtime premium required by the FLSA.  [Id. at 8–11].  Defendants respond that, when looked at in the light most favorable to them, their conduct shows they attempted to comply with the law and that they acted in good faith, even though "their treatment of overtime payment and record keeping might have been technically flawed."  [ECF No. 30 at 3].

Section 207(a)(1) of the FLSA "requires employers to compensate employees for each hour worked in excess of forty hours during a workweek 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'"  Lalli v. Gen. Nutrition Ctrs., Inc., 814 F.3d 1, 2 (1st Cir. 2016) (quoting 29 U.S.C. § 207(a)(1)) (alteration in original).  To succeed on a claim for unpaid overtime wages, Plaintiff must show that the employees were "employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'"  Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).[4]  Plaintiff

---

[4] The parties do not dispute that Neto is an employer under the FLSA and subject to the requirements of the FLSA, that Defendants employed the employees at issue in this case, or that World Marble is a covered enterprise subject to the requirements of the FLSA.  [SUMF ¶¶ 4–8, 10–18 (citing to portions of the Defendants' Answer that admit the relevant facts)].

must also show that the "employer knew or should have known that [the employees] were working overtime."  Crowe v. Examworks, Inc., 136 F. Supp. 3d 16, 43 (D. Mass. 2015) (citing Manning, 725 F.3d at 43).

Employers must consider the actual number of hours worked when calculating overtime owed to employees.  29 C.F.R. § 778.310; see also Acosta v. Min & Kim, Inc., 919 F.3d 361, 363–64 (6th Cir. 2019) (affirming district court's opinion and holding that employers violated the FLSA's overtime provisions because the employees worked more than 40 hours per week and "received the same amount—the 'guaranteed wage'—no matter how many hours they worked").  DOL's interpretive regulations addressing the issue of lump sum payments state that:

> [a] premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis. . . . The reason for this is clear. If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked.  The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated.  For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due.

29 C.F.R. § 778.310;[5] see also McLean v. Garage Mgmt. Corp., 819 F. Supp. 2d 332, 338–39 (S.D.N.Y. 2011) (stating that "DOL regulations require the payment of overtime wages to correspond

---

[5] Plaintiff relies on DOL's interpretation of the FLSA's requirements, but neither party has addressed the deference owed to that interpretation and Defendants do not dispute its applicability here.  For present purposes, the Court finds that the DOL's interpretation is persuasive and does not depart from it.  See Dooley v. Liberty Mut. Ins. Co., 369 F. Supp. 2d 81, 85 (D. Mass. 2005) (finding DOL's interpretive regulations, including 29 C.F.R. § 778.310, persuasive because they "are consistent with the statutory language"); see also Hickman v. TL Transp., LLC, 318 F. Supp. 3d 718, 723 (E.D. Pa. 2018) ("Because the DOL's rules are a

directly to the number of overtime hours" and citing to 29 C.F.R. § 778.310 in support); Hickman, 318 F. Supp. 3d at 722 (noting 29 C.F.R. § 778.310 and stating that "if an employee's total hours fluctuate from week to week, an employer may use a lump sum payment to satisfy its overtime obligations to the employee only if the sum is based on the number of overtime hours actually worked").

The Court finds that Defendants' pay practices during the second investigation period did not comply with the FLSA and its interpretive regulations because Defendants paid their employees a weekly set amount that did not take into account the actual hours worked and therefore did not include the required overtime premium.  It is undisputed that Defendants' employees worked, on average, more than 40 hours a week during the second investigation period and that Defendants knew this.  Defendants plainly admit in their Answer that "[d]uring the Second Wage and Hour Investigation. . . the affected employees worked average weekly hours ranging from 43.5 to 45 hours per week."  [ECF No. 1 ¶ 21 (allegation); ECF No. 9 ¶ 21 (admitting allegation); SUMF ¶ 23].  Neto and Ms. Faria also testified to this fact during their depositions.  [SUMF ¶ 23; ECF No. 24-2 ("Neto Deposition") 58:6–9; ECF No. 24-3 ("Faria Deposition") 14:4–7].  There is also no genuine dispute that, during the period covered by the second investigation, when their employees worked more than 40 hours, Defendants paid them a set weekly amount.  Again, Defendants admit in their Answer that "[e]mployees received a set amount of pay each week." [ECF No. 1 ¶ 22 (allegation); ECF No. 9 ¶ 22 (admitting relevant portion of allegation)].  Neto also testified in his deposition that employees were paid a set amount each week.  [Neto Depo. 45:13–46:9, 56:13–18, 66:17–19].  Finally, it is undisputed that

---

reasonable interpretation of FLSA's wage and hour requirements, they are entitled to considerable deference.").

the number of hours the employees worked in excess of the 40-hour threshold varied from week to week.  [SUMF ¶ 25; Neto Depo. 58:6–9; Faria Depo. 12:3–6].

Defendants do not quarrel with Plaintiff's interpretation of the FLSA's requirements and do not claim that their practice of paying employees a set weekly amount is permissible under the FLSA.  Instead, Defendants generally note that by paying a set amount when employees worked more than 40 hours in a week they "were of the belief . . . they were complying with the Act."  [ECF No. 30 at 3].  Defendants provide no caselaw to demonstrate that their interpretation of the FLSA is correct or that their belief is relevant to the Court's analysis on this issue.[6]

Because there is no dispute that Defendants paid employees a set amount whenever they worked above the 40-hour threshold, regardless of the actual number of overtime hours worked, Defendants did not comply with the FLSA's overtime requirements and Plaintiff is entitled to summary judgment on this issue.

### B.  Failure to Comply with the FLSA's Recordkeeping Provisions

Plaintiff also seeks summary judgment on his claim that Defendants failed to comply with the FLSA's recordkeeping regulations because they did not "maintain records of the hours worked by their employees each day and each week."  [ECF No. 23 at 18].

The FLSA requires employers to "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."  29 U.S.C. § 211(c).  The FLSA's regulations clarify that employers must

---

[6] Defendants highlight Plaintiff's admission that they paid less than the set amount when employees worked fewer than 40 hours a week and appear to argue that this means that their employees' pay varied with hours worked.  [ECF No. 30 at 3].  The fact that employees were paid a lesser amount in weeks where they worked fewer than 40 hours is not relevant to the analysis of whether Defendants properly calculated and paid the overtime premium in weeks where the employees worked more than 40 hours.

"maintain and preserve payroll or other records" of "[h]ours worked each workday and total hours worked each workweek."  29 C.F.R. § 516.2(a)(7).

The undisputed facts demonstrate that: 1) aside from a sometimes inaccurate or inconsistent spreadsheet that records total weekly hours, Defendants have not produced any records of hours worked by employees prior to October 2017; 2) for the period after October 2017, Defendants have produced "incomplete timecards for only certain employees and other incomplete weekly time records"; 3) Ms. Faria admitted that she would record daily time worked by employees on a piece of paper and would then dispose of those papers once the weekly time was entered into the spreadsheet; and 4) for installation work that took place outside of the World Marble store, Defendants assumed the employees worked the hours on the schedule and did not record the actual hours worked.  [ECF No. 23 at 17–18; SUMF ¶¶ 52–63].

Defendants do not dispute that they failed to keep records as required under the FLSA and they do not direct the Court to any evidence in the record to demonstrate that they made and preserved records of "[h]ours worked each workday and total hours worked each workweek."  29 C.F.R. § 516.2(a)(7).  In fact, Defendants appear to concede a recordkeeping violation stating "[t]he methods used by the Defendants might not have fully complied technically with the [FLSA] regarding record keeping," [ECF No. 30 at 4], and "[t]he Defendants' conduct, looked at in the light most favorable to them, shows that, while their treatment of overtime payment and record keeping might have been technically flawed, the Defendants at least attempted to comply with the law, having acted as instructed by an individual from the Department of Labor, and, at the same time, acted in good faith," [id. at 3].  Defendants, however, have not identified any

regulation or caselaw that suggests "good faith" or an "attempt to comply" is a defense to a violation of the FLSA's recordkeeping requirements.[7]

Although Defendants kept some records of the hours that their employees worked, they did not comply with the FLSA's recordkeeping requirements to make and preserve records of "[h]ours worked each workday and total hours worked each workweek" by their employees.  See 29 C.F.R. § 516.2(a)(7).  Accordingly, the Court finds that there is no genuine dispute of material fact that Defendants violated the FLSA's recordkeeping requirements.  Plaintiff's motion for summary judgment is granted as to his recordkeeping claims.

### C.    Amount Owed for Overtime Violations

Plaintiff also seeks summary judgment on the amount of unpaid back wages owed to Defendants' employees for the second investigation period.  Plaintiff asserts that Defendants owe $20,433.53 in back wages to seven employees.  [ECF No. 31 at 5; ECF No. 31-4 (listing damages owed to each of the seven employees)].  Defendants do not dispute this calculation or offer a competing one.  See [ECF No. 30].

Plaintiff argues that because Defendants failed to maintain adequate and accurate time records, the burden-shifting framework described in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946) applies.  In Anderson, the Supreme Court explained that in cases where the employer's records of hours worked by employees are inaccurate or inadequate "the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  Id.  Instead, courts should apply a burden-shifting framework, in which

---

[7] Good faith is, however, relevant to the question of willfulness and is addressed in Section III.E infra.

an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id.

Because Defendants failed to maintain adequate records of hours worked, see Section III.B supra, the Court applies the Anderson framework.[8]  Plaintiff has a minimal burden at the first step, though the burden is "not nonexistent."  Sec'y of Lab. v. DeSisto, 929 F.2d 789, 792–93 (1st Cir. 1991) (holding that DOL Secretary had not met his burden based on the evidence presented at trial).  To support his burden at this first step, Plaintiff largely relies on the declarations of Thomas Carroll, an investigator in the Wage and Hour Division, and "Wage Transcription and Computation" sheets for each of the seven employees that are owed back wages, which are exhibits to Carroll's declarations.  [ECF No. 23 at 13; ECF No. 24-7; ECF No. 24-8; ECF No. 31-3; ECF No. 31-4].  The Carroll declarations explain the calculations performed, describe the general investigative process (e.g., gathering "facts and documents"), and note the existence of pay documents such as spreadsheets, handwritten notes, and timecards. [ECF No. 24-7; ECF No. 31-3].  Although the Carroll declarations summarize the pay records, Plaintiff did not submit the underlying documents with his summary judgment motion and they are not before the Court.  Plaintiff also did not provide employee affidavits to support his calculations and assumptions, and did not describe any interviews with employees.

---

[8] Defendants do not argue that the Anderson burden-shifting framework should not apply.  See [ECF No. 30].

Because Plaintiff has not provided any of the pay record documents that he relied on to the Court, the Court cannot, at this juncture, evaluate whether the figures that Plaintiff used were indeed "a matter of just and reasonable inference." Anderson, 328 U.S. at 687–88.  For example, Plaintiff asks the Court to accept that the weekly average hours figure used, 44.25 hours, "is consistent with" the Defendants' payroll spreadsheets and timecard records, but did not provide those records to the Court in order to demonstrate the reasonableness of the calculation.  [ECF No. 23 at 4, 13; SUMF ¶ 35].  Accordingly, based on the record before it, the Court denies Plaintiff's motion for summary judgment on the issue of the amount of damages.

The parties dispute the proper date range for the damages calculations and whether Defendants properly asserted a defense based on the statute of limitations.  [ECF No. 30 at 6 (arguing that due to the maximum three-year statute of limitations, damages should be assessed no earlier than May 31, 2016); ECF No. 31 at 2–5 (arguing that statute of limitations defense is waived and that the Tolling Agreement allows damages to be assessed beginning on August 14, 2015)].  Because the Court denies summary judgment on the amount of damages, the Court also declines to rule on the appropriate date range for the damages at this time.

### D.    Liquidated Damages and Good Faith Defense

"The FLSA authorizes the Secretary of Labor to recover on behalf of employees unpaid wages and overtime compensation plus an equal amount in liquidated damages." Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007) (citing 29 U.S.C. § 216 (b), (c)).  An employer can escape liquidated damages only if it "'show[s] to the satisfaction of the court' that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA." Id. (quoting 29 U.S.C. § 260).  The employer has the burden to show good faith. Id.

"Good faith is lacking where the defendant has failed to investigate potential liability or 'inquire about the law's requirements.'"  Rudy v. City of Lowell, 777 F. Supp. 2d 255, 262 (D. Mass. 2011) (quoting Keeley v. Loomis Fargo & Co., 183 F.3d 257, 270 (3d Cir. 1999)); see also O'Brien v. Town of Agawam, 482 F. Supp. 2d 115, 120 (D. Mass. 2007) ("Case law . . . strongly suggests that liquidated damages must be awarded unless the employer can show that it solicited an opinion from the Department of Labor regarding the employment practice at issue . . . or 'rel[ied] on the advice of informed counsel.'") (first citing McLaughlin v. Hogar San Jose, Inc., 865 F.2d 12, 14 (1st Cir. 1989); then quoting Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 72 (2d. Cir. 1997)).

The parties dispute whether Defendants acted in good faith.  Plaintiff argues that no reasonable jury could find that Defendants acted in good faith because Defendants failed to take any steps to ensure compliance with the FLSA after the Wage and Hour Division's first investigation into their pay practices.  [ECF No. 23 at 16].  Similarly, Defendants had no reasonable basis to think that their pay practices during the second investigation period complied with the FLSA because the first investigation put them on notice that paying a set amount for varying amounts of overtime hours violated the FLSA's overtime provisions.  [Id.].

Defendants appear to argue they acted in good faith, despite the "technically flawed" nature of their overtime payments because they have attempted to comply with the FLSA and have followed the instructions of "an individual from the Department of Labor." [ECF No. 30 at 3–4].  In support, Defendants cite to a portion of Neto's deposition in which he testified that someone from the DOL told him to start making a schedule.  [Id. at 5].  The cited testimony,

however, relates to how Defendants recorded the hours worked by their employees and is therefore not relevant to Defendants' decision to pay their employees a set weekly amount.[9]

Defendants also argue that although they did not contest the first Wage and Hour Division's investigation, they did not admit liability on the overtime pay issue and signed the settlement agreement and agreed to pay the back wages due largely to a financial inability to contest the findings.  [ECF No. 30 at 6].  Defendants point to nothing in the record to support this assertion, and even if that assertion were true, it does not create an issue of fact as to whether the Defendants "acted in good faith and had reasonable grounds for believing that [their] acts did not violate the FLSA."  See Hotel Oasis, Inc., 493 F.3d at 35.  Regardless of whether Defendants agreed with the first investigation's findings, the crux of the good faith inquiry is whether the employer took steps to investigate their requirements under the FLSA.  Rudy, 777 F. Supp. 2d at 262.

Even viewing the facts in the light most favorable to Defendants, no reasonable jury could conclude that Defendants acted in good faith with regard to their overtime pay practices. In their discovery responses, Defendants plainly admitted that "after the First Wage and Hour Investigation, Defendants were aware of the overtime and recordkeeping requirements of the [FLSA]."  [ECF No. 24-6 at 5; see also SUMF ¶ 48].  Further, Neto signed a settlement agreement stating that Defendants' "employment practices are currently in compliance with all applicable provisions of the [FLSA] as interpreted by the Secretary" and that they "will continue to comply with all applicable provisions of the [FLSA] in the future," [SUMF ¶¶ 46–47], but Defendants did not consult with counsel or undertake any other efforts to determine how to

---

[9] Plaintiffs seek liquidated damages for the Defendants' overtime pay practices, not their recordkeeping practices.  See [ECF No. 23 at 16].

comply with overtime regulations and ensure employees were properly paid, [id. ¶¶ 50–51]. Accordingly, Plaintiff is entitled to summary judgment on the issue of liquidated damages.[10]

### E.    Willfulness and the FLSA's Statute of Limitations

"The FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies."  Reich v. Newspapers of New Eng., Inc., 44 F.3d 1060, 1079 (1st Cir. 1995) (citing 29 U.S.C. § 255(a)).

An employer's violation of the FLSA is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  "Courts have found willfulness in FLSA cases most often when an employer 'deliberately chose to avoid researching the law's terms or affirmatively evaded them.'"  Marcus v. Am. Cont. Bridge League, Inc., No. 17-cv-11165, 2021 WL 1132161, at *22 (D. Mass. Mar. 24, 2021) (quoting Hoffman v. Pro. Med Team, 394 F.3d 414, 419–20 (6th Cir. 2005)); Pineda v. Skinner Servs., Inc., No. 16-cv-12217, 2020 WL 5775160, at *12 (D. Mass. Sept. 28, 2020) (noting that a "lack of diligence in researching FLSA requirements" is an indicia of willfulness).

Plaintiff argues that Defendants' violations of the FLSA's recordkeeping and overtime requirements were willful in light of the Defendants' conduct following the first investigation. [ECF No. 23 at 17].  Defendants counter that the violations were not willful because Defendants were following the instruction of a Wage and Hour Division official and believed that they were complying with the FLSA.  [ECF No. 30 at 4–5].

---

[10] Although the Court finds that Defendants are liable for liquidated damages, because the Court denied summary judgment on the amount of damages owed, the Court does not rule on the specific amount of liquated damages to which Plaintiff is entitled.

As discussed in the analysis of liquidated damages, see Section III.D supra, the Court finds there is no dispute that Defendants knew of the FLSA's overtime requirements but did not consult with counsel or otherwise investigate how to comply with them.  Id.  This failure to investigate the requirements of the FLSA demonstrates willfulness.  See Marcus, 2021 WL 1132161, at *22.  Defendants have not presented any evidence to show that a reasonable trier of fact would find that they did not act willfully when failing to properly pay overtime wages. Plaintiff is therefore entitled to summary judgment on the issue of Defendants' willfulness in failing to comply with the FLSA's overtime provisions.

On the issue of willfulness of the recordkeeping violations, however, the Court finds that when viewed in the light most favorable to Defendants, the evidence supports at least an inference that Defendants did not act willfully.[11]  Neto testified that he used a spreadsheet to keep track of the hours worked based on instructions from an official at the Wage and Hour Division.  [Neto Depo. 66: 22–67:12].  Although Plaintiff may refute that claim, at this stage of the proceedings, the Court's role is not to make credibility determinations or weigh the conflicting evidence.  Velez-Gomez v. SMA Life Assurance Co., 8 F.3d 873, 877 (1st Cir. 1993).  Accordingly, summary judgment as to the willfulness of the recordkeeping violations is denied.

### F.    Injunctive Relief

Plaintiff also asks the Court to enjoin Defendants from violating the FLSA's recordkeeping and overtime provisions in the future.  [ECF No. 23 at 18–19].  The FLSA authorizes the Court to enjoin violations of the FLSA's overtime and recordkeeping provisions.

---

[11] Though it is not entirely clear, Plaintiff appears to seek summary judgment as to the willfulness of both the overtime and recordkeeping violations.  [ECF No. 23 at 16–17].

<u>Newspapers of New Eng., Inc.</u>, 44 F.3d at 1081 (citing 29 U.S.C. § 217).  "The imposition of an injunction is not punitive, nor does it impose a hardship on the employer since it requires him to do what the [FLSA] requires anyway—to comply with the law."  <u>Acosta v. New Image Landscaping, LLC</u>, No. 18-cv-00429, 2019 WL 6463512, at *9 (W.D. Mich. Dec. 2, 2019) (quoting <u>Martin v. Funtime, Inc.</u>, 963 F.2d 110, 114 (6th Cir. 1992)).  Whether to issue an injunction is left to the Court's discretion.  <u>Newspapers of New Eng., Inc.</u>, 44 F.3d at 1081.  Courts "weigh the finding of the violation established . . . against the factors that indicate the violations are not likely to recur, such as intent to comply, extraordinary efforts to prevent recurrence, absence of repetitive violations, and absence of bad faith."  <u>Id.</u> (internal quotation marks omitted).

Defendants do not respond to Plaintiff's request for injunctive relief.  <u>See</u> [ECF No. 30].  Nor have they demonstrated an intention or proposed a plan to ensure that violations of the FLSA's recordkeeping and overtime provisions do not occur in the future.  <u>See</u> [<u>id.</u>].  Further, Defendants have a record of prior violations as demonstrated by the Wage and Hour Division's findings in the first investigation.  [SUMF ¶¶ 19–22].  Accordingly, the Court finds that injunctive relief is warranted and grants Plaintiff's request.

## IV.     CONCLUSION

Plaintiff's motion for partial summary judgment, [ECF No. 22], is <u>GRANTED</u> in part and <u>DENIED</u> in part.  The Court grants Plaintiff's motion for partial summary judgment on the following issues:

1. Defendants violated the overtime provisions of the FLSA, 29 U.S.C. §207(a)(1), during the period covered by the Wage and Hour Division's second investigation;

2. Defendants violated the recordkeeping requirements of the FLSA, 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2(a)(7);

3. Defendants did not act in good faith when they violated the FLSA's overtime provisions during the Wage and Hour Division's second investigation period and Plaintiff is entitled to liquidated damages; and

4. Defendants willfully violated the FLSA's overtime provisions during the period covered by the Wage and Hour Division's second investigation.

The Court denies Plaintiff's motion for partial summary judgment on the following issues:

1. the amount of back wages Defendants owe their employees for overtime violations during the period covered by the Wage and Hour Division's second investigation; and

2. the willfulness of Defendants' recordkeeping violations.

Further, Defendants are enjoined from violating 29 U.S.C. §§ 207(a)(1), 211(c) and 29 C.F.R. § 516.2(a)(7).

**SO ORDERED.**

June 17, 2021

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE